IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WARREN KEYE, *et al.* | * | |
| Plaintiffs | * | |
| v. | * | CASE NO.: DKC-07-2926 |
| RED ROOF INNS INC., *et al.* | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, Red Roof Inn, Inc., Accor North America, Inc., Red Roof Franchising, LLC, and RRI Acquisition Co., Inc., (hereafter collectively referred to as "Red Roof Inns)[1], by their undersigned attorneys, submit this Memorandum in Support of their Motion for Summary Judgment as to plaintiffs' claims.

## FACTS

Plaintiff, Warren Keye, was an employee of S & W Security Services, Inc. ("S & W"). Mr. Keye was employed as a security guard. (*See* Exhibit 1, deposition of W. Keye, p. 52). S & W entered into a contract with Red Roof Inns, Inc. to provide security services at the Red Roof Inns located in Laurel, Maryland. (The contract is marked as Exhibit 2; and authenticated by Exhibit 3, deposition of L. Simms, pp. 9, 10, 28). It was Mr. Keye's job to patrol the three-floor Red Roof Inns hotel on a regular basis to discourage criminal activity and other inappropriate conduct. (Exhibit 1, pp. 52, 74). Mr. Keye worked at the same Red Roof Inns

---

[1] Plaintiffs have sued four related Red Roof entities, only one of which owned and operated the hotel at the time of the occurrence. Red Roof Inns, Inc. should be the sole Red Roof defendant in this lawsuit. Putting aside the issue of notice, the remaining three Red Roof defendants should be dismissed from this lawsuit.

hotel in Laurel, Maryland approximately three to five times a week for the six months prior to the occurrence. (Exhibit 1, p. 51). Mr. Keye worked the evening shift and arrived most days at approximately 6:00 p.m. (Exhibit 1, p. 58).

On October 14, 2004, Mr. Keye was responding to possible criminal activity on an upper floor of the hotel when he began to ascend a stairwell at the hotel. (Exhibit 1, pp. 85-86). The stairwell at issue was located directly next to the office at the Red Roof Inns. (Exhibit 1, p. 88). Mr. Keye estimated that on all of its prior times working at the hotel, he had averaged approximately 10 to 20 times a work shift in which he went up or down the stairwell at issue. (Exhibit 1, p. 89). Mr. Keye indicated that he never noticed any defect, problem or concern with the stairs at issue prior to the occurrence. (Exhibit 1, p. 90). He had never tripped or fallen on the steps before the occurrence. (Exhibit 1, p. 94).

As he ascended the steps – moving "mighty fast" – a metal portion of the second tread from the bottom, came loose allegedly causing Mr. Keye to fall. (Exhibit 1, pp. 95, 96, 99-101). Mr. Keye's employer came to the scene and observed what looked like a "step grip' was hanging after Mr. Keye's injury. (Exhibit 3, pp. 53-55). It is not clear whether or not this portion of the step came loose as a result of Mr. Keye stepping on it or if it came loose prior to him stepping on it. In any event, there is no dispute that no person saw the step with the metal portion loose prior to the moment that Mr. Keye stepped on it. There are no facts of any actual notice whatsoever. There are no facts to suggest the alleged defect was observed by anyone prior to the occurrence. There are no facts to suggest any prior injuries ever occurred on the step where Mr. Keye was injured or even on the same stairway. There are no facts to suggest that prior to the occurrence anyone ever made a complaint about the condition of the steps. Mr.

Keye, who used the steps perhaps more frequently then anyone else, certainly made no such complaint. No other S & W employees made complaints about the premises. (Exhibit 3, pp. 48, 49). Also, there are also no facts admissible in evidence to suggest constructive notice and accordingly summary judgment is appropriate.

## ARGUMENT

### Summary Judgment Standard.

Summary judgment is proper if the evidence before the court establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998).

Rule 56 mandates summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. *See also, Doughty Communications, Inc. v. Novatel Computer Systems, Corp.*, 217 F. Supp. 581, 591 (D. Md. 1992). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial [and] the moving party is 'entitled to judgment as a matter of law.'" *Celotex*, 477 U.S. at 323 (citations omitted).

By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The Fourth Circuit made clear in *Thompson Everett, Inc. v. National Cable Advertising*, 57 F.3d 1317, 1322 (4th Cir. 1995) that (1) "the mere existence of some disputed facts does not require that a case go to trial;" (2) "the disputed facts must be material to an issue necessary for the proper resolution of the case;" and (3) "the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." *Id.* at 1323 (citations omitted). Thus:

> if the evidence is merely colorable or not significantly probative, it may not be adequate to oppose entry of summary judgment . . . While we have recognized generally that when considering a motion for summary judgment, the district court must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion, we hasten to add that those inferences must, in every case, fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture.

*Thompson Everett*, 57 F.3d at 1323 (citations omitted).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings' but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). A court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (*quoting Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993); *see also Empire Fire & Marine Ins. Co. v. Continental Cas. Co.*, 426 F.Supp.2d 329, 330-31 (D.Md. 2006); *Miller v. U.S. Foodservice, Inc.*, 405 F.Supp.2d 607, 615 (D.Md. 2005).

Unsupported speculation will not defeat a motion for summary judgment. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986)). To meet the burden, the opposing party must show that there is more than some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Factual disputes over issues not germane to the claim are irrelevant, and the Court may grant summary judgment, notwithstanding the existence of immaterial factual disputes. *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F. 3d 124 (4th Cir. 2002). Only disputes over facts which might affect the outcome of the case under the governing law are considered "material." *Anderson*, 477 U.S. at 247-48.

### There are no facts to suggest defendants had notice of the defect which caused plaintiff's injury

The occurrence took place in Laurel, Maryland and therefore Maryland law applies to the Plaintiff's tort claims against Red Roof Inns. *See, Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Maryland law requires that in order for the plaintiff to succeed in a premises liability lawsuit that the plaintiff prove there was a dangerous condition and that the owner of the property had knowledge of the dangerous condition in time to correct such condition or warn about it. *See, e.g., Rehn v. Westfield*, 153 Md. App. 586, 593 (2003). The required proof of such dangerous condition must amount to more than mere "speculation or conjecture". *Moulden v. Greenbelt Consumer Services, Inc.*, 239 Md. 229, 232 (1965). The plaintiff must offer proof that the dangerous condition existed prior to the occurrence as there is "no presumption of negligence on the part of the owner[s] which arises merely from a showing that an injury was sustained in a store." *Id.* at 232. In the absence of proof of notice of a defective condition, summary judgment is appropriate.

*See, e.g., Carter v. Shoppers Food Warehouse*, 126 Md. App. 147, 160 (1999). Mere speculation that there was notice that a dangerous condition existed does not sustain a plaintiff's burden of proof. *See, e.g., Garval v. City of Rockville*, 177 Md. App. 721 (2007).

Maryland cases consistently required a plaintiff to demonstrate that an owner of premises had constructive or actual notice of a dangerous condition in order to recover. *See generally, Lexington Market Auth. v. Zappala*, 233 Md. 444, 446 (1946). Not only must the plaintiff prove notice of the dangerous condition which caused his fall, the plaintiff must also show that the defendant's notice was gained in sufficient time such that the defendant had an opportunity to remove it or warn the plaintiff. *Joseph v. Buzzuto Mgmt. Co.*, 173 Md. App. 305, 317 (2007).

Under Maryland law, notice can be either actual or constructive. Actual notice is clearly lacking in this case. There are no facts to suggest that any employee of Red Roof Inns ever saw or received notification of the defect which caused the plaintiff's injury. In the absence of actual notice, Maryland law also allows notice to be proven on a constructive basis. However, constructive notice requires that a defect be of such nature as to be readily observable. *Walen v. Mayor & City Council of Baltimore*, 164 Md. App. 292, 883 A.2d. 228 (2005). Maryland cases on constructive notice have focused primarily on the factor of time that a condition existed in order to impose constructive notice of a condition on a defendant. In the absence of facts suggesting how long a condition existed, summary judgment is appropriate. *Id.* Further, even if constructive notice can be suggested by facts about the length of time that a condition existed, the condition still must be of a sufficient "nature and character in order to impute notice to a defendant." *Id.*

In this case, there are also no facts of constructive notice. The plaintiff himself denied ever observing any problem or defect with the steps before he fell. (Exhibit 1, p. 89-93). The plaintiff

has hired an expert, an architect, who has opined that the defect in the stairs existed for "years" prior to the occurrence. (Exhibit 4, deposition of L. Dinoff, p. 69). The basis for his opinion that the defect existed for "years" is that Mr. Keye took photographs of some of the steps in the stairway approximately one to two months after the occurrence and that some of those steps have some discoloration in some places. (Exhibit 4, p. 61). Plaintiff's expert's opinion is that depending on the type of discoloration, such discoloration may be evidence of rust. (Exhibit 4, pp. 62-63). There are no photographs of the step at issue or the stairway at issue prior to the occurrence before it was repaired. (Exhibit 4, p. 39). There are no photographs which show the condition of the step at issue at the time of the occurrence. It is undisputed that, the step at issue was repaired by the time Mr. Keye took his photographs. *Id.* Mr. Keye did not take photographs of all of the approximately fifteen (15) steps in the stairwell. (Exhibit 4, pp. 39, 61). There is no dispute that Mr. Keye's photographs show differing amounts of discoloration from tread to tread. (Exhibit 4, p. 63). The mere fact that some of the steps in the stairway appear discolored in the photos Mr. Keye took does not indicate that the step that injured Mr. Keye is on the verge of collapsing or otherwise created a walking hazard.

In order to be admissible, expert testimony must be both reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court set forth specific, non-exhaustive factors for the court to consider in evaluating the relevance and reliability of expert testimony including whether the opinion (1) can be, or has been, tested; (2) has been the subject of peer review and publication; (3) has a known or potential rate of error; and (4) has general acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 593-94.

In this case, Mr. Dinoff indicates that based on Mr. Keye's post-accident photographs, that the step at issue which caused Mr. Keye to fall was "dangerous and deteriorated" for a period of "years". (Exhibit 4, p. 69). Mr. Dinoff cannot state the exact number of "years" that the condition allegedly existed but opined it could have been anywhere from one year to five years (Exhibit 4, p. 69-70). He said the steps were dangerous and deteriorated because of rust. (Exhibit 4, p. 68). Mr. Dinoff did not rely upon any studies, texts, articles, or learned treatises in order to come to his opinion that based on photographs he can determine the length of time that a defect in a step existed. (Exhibit 4, p. 67). He has never authored any publication on rust formation. (Exhibit 4, p. 72). He did not consult with metallurgists or other experts about his opinion. (Exhibit 4, p. 22).

It is undisputed that the photos taken by Mr. Keye show the step at issue after it had been repaired after Mr. Keye fell. (Exhibit 4, p. 39). There are no photographs which show that the step at issue was discolored or otherwise defective prior to the date of the occurrence. *Id.* In fact, Mr. Dinoff makes that leap of logic based on the apparent discoloration shown in the photographs of some of the other steps in the same stairway. However, even discoloration does not indicate that the step is defective or otherwise about to collapse. (Exhibit 4, p. 82). Mr. Dinoff is not a metallurgist and has not conducted any studies regarding the steps at issue. (Exhibit 4, pp. 21-22). Mr. Dinoff knows that the steps are made of steel. However, he did not know the type of steel. (Exhibit 4, p. 55). He did not know the thickness of the steel. (Exhibit 4, pp. 53-54). While he believes that discoloration may be evidence of rust, he does not know that the rate at which rust forms. (Exhibit 4, p. 63). He conceded that once rust begins to form it accelerates, but could not quantify that further. (Exhibit 1, p. 87).

The only arguable basis for Mr. Dinoff's ability to provide any testimony regarding the length of time that a defect existed in the step at issue is his alleged qualification by experience as an expert witness. However, mere qualifications of an expert standing alone is not enough. The testimony must be determined by the court to be reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 158 (1999). In the absence of any research, review of relevant literature, or consultation with any other experts in the field to verify the validity of his theory of defect, Mr. Dinoff should not be permitted to rely upon his mere status as an architect to compel the admission of his expert testimony. *See, e.g., 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985 (10th Cir. 2006); *Hoy v. DRM, Inc.*, 114 P.3d 1268 (Wyo. 2005).

In this case, there is no basis for any opinion that the step at issue is defective. The only possible evidence of constructive notice is the opinion of Mr. Dinoff, which is not reliable in the absence of the necessary experience or factual predicate to render any opinion regarding the step at issue. In opposing a motion for summary judgment, a party can only oppose that motion for summary judgment with facts which would be admissible in evidence. *See, e.g.,* Fed.R.Civ.P. 56(e); *Mitchell v. Data General Corp.*, 12 F.3d 1310 (4th Cir. 1993). Mr. Dinoff's opinion, if not reliable, is not admissible, and absent Mr. Dinoff's opinion, there are no facts to suggest constructive notice.

The testimony by plaintiff's expert is not reliable and does not satisfy the requirement of admissible evidence demonstrating constructive notice. In the absence of notice – actual or constructive – the plaintiff cannot sustain his burden of proof and summary judgment is appropriate for defendants.

Respectfully submitted,


*/s/Stephen S. McCloskey*
Stephen S. McCloskey, Federal Bar No.: 04640
Semmes, Bowen & Semmes
25 South Charles Street, Suite 1400
Baltimore, Maryland 21201
(410) 539-5040
*Attorneys for Plaintiff*
*Red Roof Inns, Inc.*

B0841026.WPD